514 A.2d 635

**Jean R. VICKODIL**

v.

**The PENNSYLVANIA INSURANCE GUARANTY ASSOCIATION, Appellant.**

Superior Court of Pennsylvania

Argued June 4, 1986.

Filed Sept. 3, 1986.

Rowley, J., dissented.

Joseph M. Hankins, Philadelphia, for appellant.

Lester E. Zittrain, Pittsburgh, for appellee.

Before ROWLEY, DEL SOLE and CERCONE, JJ.

CERCONE, Judge:

This case presents for our determination two narrow and clearly-defined issues: whether the Pennsylvania Insurance Guaranty Association (the Association) is obligated to pay the loss of consortium judgment entered in favor of appellee, Jean R. Vickodil, as a "covered claim" under the Pennsylvania Insurance Guaranty Association Act, 40 P.S. § 1701.101 *et seq.* (the Act).[1] And, if it is, is the Association

1. The purposes of the Act appear in 40 P.S. § 1701.102:

> (1) To provide a means for the payment of covered claims under certain property and casualty insurance policies, to avoid excessive delay in the payment of such claims, and to avoid financial loss to claimants or policyholders as a result of the insolvency of an insurer;
>
> (2) To assist in the detection and prevention of insurer insolvencies; and
>
> (3) To provide for the formulation and administration by The Pennsylvania Insurance Guaranty Association of a plan of operation

obligated to pay interest on the judgment entered against Amram Enterprises, the insured of an insolvent insurance company, beginning on the date of the judicial declaration of insolvency, or on a date ninety (90) days following therefrom. The parties submitted these issues to common pleas court in an amicable action on a case stated basis. The court determined that the Association was obligated to pay on the loss of consortium judgment as a separate claim of Mrs. Vickodil and that, also, interest should be computed from the date of the judicial declaration of insolvency of the insurer. The Association appealed.

The facts of this case are as follows: On October 31, 1979, Appellee's husband, William J. Vickodil, Sr., was seriously injured when the pick-up truck he was operating in Beaver County, Pennsylvania, was struck by another vehicle which had been proceeding in the opposite direction and which crossed over to the wrong side of the roadway and crashed into the Vickodil vehicle. The vehicle which struck the Vickodil pick-up truck was being operated by an employee of the owner of the truck, Amram Enterprises.

The Amram vehicle was covered by bodily injury liability insurance as follows: primary coverage was by Aetna Insurance Company to limits of $100,000 per person and $300,000 per accident; first excess coverage was by Northeastern Insurance Company to $900,000 single limit as excess over the underlying Aetna coverage; and second excess coverage by Lexington Insurance Company to a $4,000,000 single limit as excess over the $1,000,000 underlying coverage provided by Aetna and Northeastern.

To recover damages arising from the accident, suit was filed on behalf of Mr. and Mrs. Vickodil against Amram Enterprises, the insured of the three companies. Mrs. Vickodil's only claim was for loss of consortium. A jury verdict of $1,398,928.10 was rendered in favor of Mr. Vickodil against Amram Enterprises, and a separate verdict of $75,006 resulted in favor of Mrs. Vickodil on her loss of consortium claim. The verdict was reduced to judgment on

necessary to effectuate the provisions of this act. 1970, Nov. 25, P.L. 716, No. 232, art. I, § 102.

April 2, 1984. That same month, Aetna paid its $100,000 primary coverage limit to the Vickodils. Lexington paid $473,934.10, which represents the amount which the total verdicts exceeded the combined $1,000,000 underlying coverage provided by Aetna and Northeastern. On June 1, 1984, Commonwealth Court declared Northeastern an insolvent insurer and ordered it liquidated and dissolved. Northeastern had never paid any of its applicable $900,000 first excess coverage limits to appellee or her husband. Proof of claim forms were submitted to the liquidators of Northeastern on behalf of the Vickodils as follows: the respective shares of the total jury verdict of $1,473,934.10 were 94.91% or $1,398,928.10 for William and $75,006 or 5.09% for Jean; thus, of the $900,000 claim under the Northeastern policy, the amount of William's claim was $854,190 (94.91%) and Jean's was $45,810 (5.09%).

These claims were referred to the Pennsylvania Insurance Guaranty Association for payment under the Act. The Association paid the maximum allowed under the Act of $300,000 less a $100 deductible or $299,900 to Mr. Vickodil.[2] However, it is the refusal of the Association to pay the $45,810 claim of Jean Vickodil which is the subject of this appeal.

The Act defines "covered claim" in 40 P.S. § 1701.103(5):

2.  § 1701.201(b) Powers and Duties:
    (1) The association shall:
    (i) Be obligated to make payment to the extent of the covered claims of an insolvent insurer existing prior to the determination of said insurer's insolvency, and covered claims arising within thirty days after the determination of insolvency, or before the policy expiration date if less than thirty days after such determination, or before the insured replaces the policy or causes its cancellation, if he does so within thirty days of such determination; but such obligation shall include only that amount of each covered claim which is in excess of one hundred dollars ($100), and is less than three hundred thousand dollars ($300,000). In no event shall the association be obligated on a covered claim in an amount in excess of the obligation of the insolvent insurer under the policy under which the claim arises.
    (ii) Be deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if that insurer had not become insolvent.

(5) (a) "Covered claim" means an unpaid claim, including a claim for unearned premiums, which arises under a property and casualty insurance policy of an insolvent insurer and is:

(i) The claim of a person who at the time of the insured event resulting in loss or liability was a resident of this Commonwealth, or

(ii) A claim arising from an insured event resulting in loss or liability to property which was permanently situated in this Commonwealth.

. . .

(c) A covered claim shall not include any amount in excess of the applicable limits of the policy under which it arises.

The Association, in support of its denial to pay for the loss of Mrs. Vickodil's consortium claim because it is derivative of Mr. Vickodil's and not a separate covered claim, cites the language of the underlying Northeastern policy which incorporates the policy of Aetna, which in pertinent part provided:

Bodily Injury Liability Coverage: The limit of bodily injury liability stated in the declarations as applicable to "each person" is the limit of the company's liability for all damages, including damages for care and loss of services, because of bodily injury sustained by one person as the result of any one occurrence; but subject to the above provision respecting "each person", the total liability of the company for all damages, including damages for care and loss of services, because of bodily injury sustained by two or more persons as the result of any one occurrence shall not exceed the limit of bodily injury liability stated in the declarations as applicable to "each occurrence".

The Association then argues that this bodily injury liability limitation in the Aetna Policy was applicable to all damages which resulted from Mr. Vickodil's bodily injury, including the loss of consortium claim of appellee. Thus, According to appellant, Northeastern was obligated to pay a maximum of $900,000 for all damages arising from the

bodily injury to Mr. Vickodil, and then, upon Northeastern's insolvency, the Association, according to the appellant, became liable to the extent of its statutorily mandated limit of $299,900. The Association's contention is that the contractual obligation of $900,000 was replaced by the statutory limit of $299,900, such that the Association's maximum obligation for both direct and derivative damages, arising out of Mr. Vickodil's bodily injuries which include the loss of consortium claim, is $299,900, citing *Smith v. Cassida,* 403 Pa. 404, 169 A.2d 539 (1961) and *Scattaregia v. Shin Shen Wu,* 343 Pa.Super. 452, 495 A.2d 552 (1985).

Appellee counters with the fact that because her claim was covered in both the Aetna and Northeastern policies, the Association is obligated to pay her claim separately. Appellee emphasizes that a loss of consortium can be a derivative claim, yet also a separate and distinct claim, especially when the separate and distinct interests of spouses are invaded by tortious conduct which results in physical injury to one who is married. We agree with the appellee that her "right of recovery" which resulted in her verdict and judgment are unassailable under Pennsylvania law, as in all jurisdictions. However, it does not follow that her loss of consortium claim against Northeastern and now against the Association, gives rise to a separate $299,900 liability in the Association.

Contrary to appellee's contention, we find the cases cited by appellants as controlling in this case. *Smith v. Cassida, supra,* involved a dispute between insureds who had obtained a judgment of $12,000 for the wife's bodily injuries and a judgment in the husband's favor of $12,000 for his wife's medical care and loss of her services and their insurer. The liability policy provided limits of $10,000 for each person and $20,000 for each occurrence. 'Each person' was defined as to the limit of liability sustained by one person including damages for care and loss of services arising out of the bodily injury. The Supreme Court held that the insurer's total liability to husband and wife was

$10,000. "The recoverable damages, direct and consequential, are essentially due to the bodily injury of one person. They may not be broken up in order to increase the liability limit provided for. The limit of liability applies to the person injured and not to the person suffering loss." *Smith v. Cassida, supra,* 403 Pa. at 407, 169 A.2d at 541. So also in *Scattaregia v. Shin Shen Wu, supra,* is the derivative nature of a loss of consortium claim the basis of the court's holding that when an injured spouse's comparative negligence reduces a spouse's damages in proportion to that negligence, the damages awarded an uninjured spouse for loss of consortium must likewise be proportionately reduced. *See also Boarts v. McCord,* 354 Pa.Super. 96, 511 A.2d 204 (1986). Thus, when we are presented with a unique situation like the one in this case, we must attempt to reconcile the opposing interpretations of the nature of a loss of consortium claim, one of which is proper for one purpose, namely the right of recovery of a spouse as "separate", and the other which is proper when a limitation of liability unites the two separate claims under the "person injured" language, as in this case.

Because the Aetna policy, as incorporated in the Northeastern policy cited above, stated $900,000,[3] as its maximum liability for all damages, direct or derivative, arising from Mr. Vickodil's bodily injury, it would be improper to impose on the Association a separate $299,900 liability to cover Mrs. Vickodil's loss of consortium claim. To hold otherwise would be to ignore the Aetna policy limitation of liability language which necessarily defines the meaning of "covered claim" as it appears in the Act and would void the legislatively mandated limitation of liability of the Association as set forth in the Act.

Judgment of the trial court is reversed.

ROWLEY, J., dissents.

3. Read herein $299,900 as the Association's maximum liability.