550 A.2d 537

Thomas A. MANZITTI and Patricia Manzitti, Appellants,

v.

Dr. Fred R. AMSLER, Jr. and Williamsport Orthopedic Hospital, Appellees.

Superior Court of Pennsylvania.

Argued Feb. 3, 1988.

Filed Oct. 3, 1988.

Reargument Denied Nov. 21, 1988.

John C. Youngman, Jr., Williamsport, for appellants.

Joann Drust, Wilkes–Barre, for appellees.

Before CAVANAUGH, OLSZEWSKI and POPOVICH, JJ.

OLSZEWSKI, Judge:

Appellants, Thomas A. and Patricia Manzitti, appeal from the trial court's order granting appellees' petition to enforce a settlement agreement for personal injuries and loss of consortium. Appellants present two issues for our review: (1) whether settlement of an injured spouse's claim for personal injuries disposes of the non-injured spouse's loss of consortium claim, and (2) whether a settlement agreement is enforceable where an attorney wrongfully settles a case without first obtaining the consent of his/her client. For the reasons stated below, we affirm the trial court's order enforcing the settlement agreement.

Appellant Thomas Manzitti filed this medical malpractice action against appellees for injuries arising out of an operation performed by appellee, Dr. Fred Amsler, M.D., on August 19, 1982. Mr. Manzitti's injuries included, *inter*

*alia,* severed spinal nerves, permanent loss of bowel and bladder control, and sexual impotency. Appellant Patricia Manzitti, wife of Thomas, jointly filed a claim for loss of her husband's consortium.

Originally, appellants were represented by John Kocsis, Esquire. In early February 1986, appellees' insurance carrier, through its general agent, negotiated a settlement directly with Attorney Kocsis and offered $150,000.00 to settle the claims of both appellants.[1] Attorney Kocsis indicated to the insurance agent that he had authority to settle the case and, on February 6, 1986, accepted the settlement offer on behalf of both appellants. Appellees tendered the settlement draft to appellants on several occasions, and appellants, expressing their intention to abrogate the oral settlement agreement, refused to accept the settlement and sign the releases.

On April 18, 1986, appellants, through new counsel, filed a motion for continuance, withdrawal of counsel, and removal of the case from the trial list. In the motion, signed and verified by appellants, the following statements were made:

10. Patricia Manzitti was never consulted by Attorney Kocsis with respect to giving authority to settle her case and never authorized settlement of her case at any time or for any price.

11. The offer of the defense for One Hundred Fifty Thousand and 00/100 ($150,000.00) Dollars was not an offer to settle the case of Thomas Manzitti alone, but was an offer to settle both the case of Thomas Manzitti and Patricia Manzitti for a total payment of One Hundred Fifty Thousand and 00/100 ($150,000.00) Dollars, and no division between the two cases was made in said offer.

12. Thomas Manzitti authorized the settlement of his case for One Hundred Fifty Thousand and 00/100 ($150,-000.00) Dollars on the belief as represented by Attorney

1. Appellees would pay $100,000.00 while the Medical Professional Catastrophe Loss Fund would contribute the additional $50,000.00.

Kocsis that the most he could obtain in a jury verdict was Two Hundred Thousand and 00/100 ($200,000.00) Dollars. The trial court subsequently granted the motion and removed the case from the trial list.

Appellees thereafter responded with a petition to enforce settlement which was argued before the trial court on March 9, 1987. At that hearing, the trial court ruled that paragraphs 11 and 12 of appellants' April 18, 1986 motion were judicial admissions by appellants of Thomas Manzitti's express authorization to settle his personal injury claim. The trial court, however, refused to hear evidence on whether Attorney Kocsis actually acquired express authority for Patricia Manzitti to settle the case prior to accepting appellees' offer. The trial court found that the settlement of Mr. Manzitti's claim extinguished the right of Mrs. Manzitti to proceed any further with her cause of action because her loss of consortium claim was derivative of her husband's personal injury claim. In addition, relying on *Rothman v. Fillette*, 503 Pa. 259, 469 A.2d 543 (1983), the trial court concluded that the settlement agreement was enforceable regardless of whether Attorney Kocsis had appellants' express authority to settle their claims. Thus, the trial court ordered appellants to comply with the settlement agreement and this timely appeal followed.

Appellants' first contention is that the trial court erred by finding that a non-injured spouse's loss of consortium claim is barred by an injured spouse's settlement of his/her personal injury claim. For the purpose of discussing this issue, we find that the trial court properly determined that Mr. Manzitti authorized settlement of his personal injury claim. In addition, since the trial court refused to hear evidence on Mrs. Manzitti's alleged authorization of her claim, we will assume, for review purposes, that she did not authorize settlement of her loss of consortium claim.

Initially, we note that it is well-settled in Pennsylvania that an action for loss of consortium is derivative of the injured spouse's claim. *See, e.g., Winner v. Oakland Township*, 158 Pa. 405, 27 A. 1110 (1893); *Linebaugh v.*

*Lehr,* 351 Pa.Super. 135, 505 A.2d 303 (1986); *Scattaregia v. Shin Shen Wu,* 343 Pa.Super. 452, 495 A.2d 552 (1985); *Hopkins v. Blanco,* 224 Pa.Super. 116, 302 A.2d 855 (1973), *aff'd,* 457 Pa. 90, 320 A.2d 139 (1974); *Little v. Jarvis,* 219 Pa.Super. 156, 280 A.2d 617 (1971); *Elser v. Union Paving Co.,* 167 Pa.Super. 62, 74 A.2d 529 (1950). The rationale for considering the claim derivative has been explained as follows:

> The consortium claim and the personal injury claim are closely interconnected; together, they represent the total, compensable damages—direct and indirect—suffered as a result of the principal plaintiff's injury. Viewed in this light, it makes little sense to hold that an injured party's negligence would bar or limit his recovery for *direct* injury, but would not affect his spouse's recovery for *indirect* injury.
>
> The consortium plaintiff ... has suffered no direct injury.... [His/Her] right to recover is derived, both in a literal and legal sense, from the injury suffered by [his/her] spouse.

*Scattaregia,* 343 Pa.Super. at 455–456, 495 A.2d at 553–554 (*quoting Maidman v. Stagg,* 82 A.D.2d 299, 304, 441 N.Y. S.2d 711, 715 (1981)).

■ The question of whether the non-injured spouse's claim for loss of consortium is barred by the injured spouse's settlement and release of his/her personal injury claim has yet to be directly addressed by a Pennsylvania appellate court. Several Pennsylvania decisions, however, support our holding today that a loss of consortium claim is a separate and distinct cause of action from the injured spouse's claim from which it was derived; and, consequently, that a claim for loss of consortium is not barred by the settlement and release of the injured spouse's personal injury claim. *See Nunamaker v. New Alexandria Bus Co.,* 371 Pa. 28, 88 A.2d 697 (1952); *Walker v. Philadelphia,* 195 Pa. 168, 45 A. 657 (1900); *Buttermore v. Aliquippa Hospital,* 368 Pa.Super. 49, 533 A.2d 481 (1987); *Vickodil v. Pennsylvania Ins. Guar. Ass'n,* 356 Pa.Super. 325, 514

A.2d 635 (1986), *allocatur denied,* 514 Pa. 639, 523 A.2d 346 (1987); *Hopkins v. Blanco,* 224 Pa.Super. 116, 302 A.2d 855 (1973), *aff'd,* 457 Pa. 90, 320 A.2d 139 (1974); *Kowal v. Com., Department of Transp.,* 100 Pa.Cmwlth. 593, 515 A.2d 116, *allocatur denied,* 514 Pa. 649, 524 A.2d 496 (1987).

As early as 1900, our Supreme Court intimated that loss of consortium is a separate and distinct cause of action. In *Walker v. Philadelphia,* 195 Pa. 168, 45 A. 657 (1900), our Supreme Court, commenting on a husband's claim for loss of consortium, stated: "His action now is on his own common-law right to compensation for the loss of his wife's services. No settlement or disposition of her claim could affect his without his consent." *Walker,* 195 Pa. at 174, 45 A. at 657.

In *Vickodil v. Pennsylvania Ins. Guar. Ass'n,* 356 Pa. Super. 325, 514 A.2d 635 (1986), this Court was presented with a situation where a husband and wife attempted to collect insurance proceeds for personal injury and loss of consortium damages through the Pennsylvania Insurance Guaranty Association Act, 40 Pa.S.A. § 1701.101, *et seq.* The insurance policy, which was issued by an insolvent insurer, expressly provided that compensation for loss of consortium damages was included in the personal injury claimant's recovery. This Court agreed with the Insurance Guaranty Association that it was only obligated to pay the individual claim of husband. As a part of the analysis, this Court stated:

> [W]e must attempt to reconcile the opposing interpreta-tions of the nature of a loss of consortium claim, one of which is proper for one purpose, namely the right of recovery of a spouse as "separate," and the other which is proper when a limitation of liability unites the two separate claims under the "persons injured" language [of an insurance policy], as in this case.

*Vickodil,* 356 Pa.Super. at 331, 514 A.2d at 638. While our purpose in *Vickodil, supra,* was to enforce the contractual provisions of the insurance policy in accordance with the

statutory provisions of the Pennsylvania Insurance Guaranty Association Act, this Court acknowledged its willingness to allow a "separate" and distinct loss of consortium claim.

Recently, this Court, in *Buttermore v. Aliquippa Hospital*, 368 Pa.Super. 49, 533 A.2d 481 (1987), again recognized the possibility of an independent loss of consortium claim which is not eliminated by the settlement of the personal injury claim. Ruling on an issue similar to that currently before us, this Court stated:

> Finally, we must briefly address the Appellants' contention that the lower court erred in dismissing the claims of Mrs. Buttermore when it granted summary judgment in favor of the Appellees. We agree with this contention. Mrs. Buttermore was never a party to the release which her husband signed, and we find no basis in the present record to foreclose her right to proceed on her loss of consortium claim.

*Buttermore*, 368 Pa.Super. at 60, 533 A.2d at 487.

Further, our Supreme Court, in *Nunamaker v. New Alexandria Bus Co.*, 371 Pa. 28, 88 A.2d 697 (1952), stated:

> Injury to a wife, not resulting in death, confers upon her and her husband *separate and distinct* rights of action for which (when both are sued for) separate verdicts must be returned and separate judgments entered. So independent of each other are the substantive rights of a husband and wife in the indicated circumstances that, at common law, the two causes could be sued for only in separate actions: see *Fries v. Wiser*, 62 Pa.Super. 218, 220 [1915]. Their joinder in one action was not permitted. A statute was necessary to effect our procedural change to that end. See Act of May 8, 1895, P.L. '54 12 P.S. § 1621 et seq.[2]

2. The Act of 1895 has been superseded by Pa.R.Civ.P. Rules 2228 and 2232. Cases interpreting the Act and prior versions of Rules 2228 and 2232, however, retain their validity because the new versions of those Rules merely restate the provisions of the Act while recognizing a woman's right to pursue a loss of consortium cause of action. Presently, the Pennsylvania Rules of Civil Procedure mandate joinder of related plaintiffs.

*Id.* 371 Pa. at 32, 88 A.2d at 699 (emphasis added). Similarly, in *Hopkins v. Blanco*, 224 Pa.Super. 116, 302 A.2d 855 (1973), *aff'd*, 457 Pa. 90, 320 A.2d 139 (1974), this Court unequivocally stated: "The infliction of a non-fatal injury upon one spouse now confers *separate and distinct* rights of actions upon both spouses." *Id.* 224 Pa.Super. at 121, 302 A.2d at 858 (emphasis added). Thus, *Nunamaker* and *Hopkins* expressly support our current position that a loss of consortium claim is a separate and distinct cause of action from the personal injury claim from which it was derived.

In addition, our legislature has also indicated that loss of consortium is compensable independently of the injured spouse's settlement and release of the personal injury claim. Under 42 Pa.C.S.A. § 8528(c),[3] damages are recoverable against the Commonwealth for, *inter alia*, loss of earnings, pain and suffering, medical expenses and loss of consortium. In *Kowal v. Com., Dept. of Transp.*, 100 Pa.Cmwlth. 593, 515 A.2d 116 (1986), the Commonwealth Court interpreted Section 8528(c) to authorize separate recoveries from the Commonwealth by the injured spouse and loss of consortium claimant. The facts of *Kowal* are similar to the

It is undisputable that Pennsylvania law, in order to promote judicial economy and avoid inconsistent verdicts, requires that the personal injury claim and the loss of consortium claim must be brought in a single action. We emphasize that our disposition of the case *sub judice* does not alter the aforementioned joinder rules. As this Court stated in *Hopkins v. Blanco*, 224 Pa.Super. 116, 302 A.2d 855 (1973): "The failure of one spouse to join the other spouse's action will forever bar the claim of the non-joining spouse. *Donoghue v. Consolidated Traction Company*, 201 Pa. 181, 50 A. 952 (1902); *Todd v. Bercini*, 371 Pa. 605, 609, 92 A.2d 538 (1952).... Thus, the rights of both spouses must be redressed in one suit." *Id.* 224 Pa.Super. at 121, 302 A.2d at 858.

3. 42 Pa.C.S.A. § 8528, Limitations of Damages, in pertinent part, reads:

(c) Types of damages recoverable.—Damages shall be recoverable only for:
(1) Past or future loss of earnings and earning capacity.
(2) Pain and suffering.
(3) Medical and dental expenses including....
(4) Loss of consortium.
(5) Property losses....

case at bar in that the injured husband settled his personal injury claim against the Commonwealth but his wife did not expressly settle her loss of consortium claim. The Commonwealth Court stated:

The Kowal's concede, as they must, that a loss of consortium claim is derivative since it arises from the impact of one spouse's physical injuries upon the other spouse's marital privileges and amenities. This does not, however, alter the uninjured spouse's status as a plaintiff in her own right since her damages, although derivative, are personal to her.

*Id.* at 597, 515 A.2d at 119.

Furthermore, we are persuaded by the opinions of our sister states which support the position that a claim for loss of consortium accrues to the non-injured spouse alone and is not barred by the settlement and release of the injured spouse's personal injury claim. *See, e.g., Crouch v. West,* 29 Colo.App. 72, 477 P.2d 805 (1970); *Deese v. Parks,* 157 Ga.App. 116, 276 S.E.2d 269 (1981); *Brown v. Metzger,* 118 Ill.App.3d 855, 74 Ill.Dec. 405, 455 N.E.2d 834 (1983), *aff'd,* 104 Ill.2d 30, 83 Ill.Dec. 344, 470 N.E.2d 302 (1984); *Rosander v. Copco Steel and Engineering Co.,* 429 N.E.2d 990 (Ind.App.1982); *Oldani v. Lieberman,* 144 Mich.App. 642, 375 N.W.2d 778 (1985); *Huffer v. Kozitza,* 361 N.W.2d 451 (Minn.App.1985), *aff'd,* 375 N.W.2d 480 (Minn.1985); *Neely v. Kossove,* 198 N.J.Super. 503, 487 A.2d 788 (1984); *Whittlesey v. Miller,* 572 S.W.2d 665 (Texas 1978). *See generally Gillespie v. Papale,* 541 F.Supp. 1042 (D.C.Mass.1982); *Fleischman v. Harwood,* 10 F.R.D. 139 (D.C.N.Y.1950); Annot., 29 A.L.R. 4th 1200 (1984).

Two of the above-cited opinions are very similar to the case at bar. In *Rosander v. Copco Steel and Engineering Company,* 429 N.E.2d 990 (Ind.App.1982), appellant's husband settled his personal injury claim against Copco Steel. Subsequently, appellant filed suit against Copco Steel for her loss of consortium resulting from her husband's injuries. The trial court, in granting Copco Steel's motion for summary judgment, reasoned:

"Inasmuch as the right of the wife is derivative of her husband's right, it appears to this Court that a settlement by the husband of his claim is likewise a settlement of his spouse's derivative suit and that the failure to settle both causes at the same time should bar a spouse from subsequently maintaining an independent action for loss of consortium."

*Id.* at 991 (quoting trial court opinion). The analysis of the trial court in *Rosander* is almost identical to that used by the trial court in the case *sub judice.* The Indiana Court of Appeals reversed the trial court and held:

It cannot be denied that a claim for loss of consortium is derivative in that without an injury to one spouse, the other spouse would have no action. As such, it is subject to some of the same defenses as the action from which it is derived. *Arthur v. Arthur* (1973), 156 Ind.App. 405, 296 N.E.2d 912. Nevertheless, placing actions in a derivative posture doe not give one party the right to waive the rights of another. Shirley was not a party to the settlement and release negotiated by Darwin, this she is not bound by it and is free to pursue her separate cause of action. *See, Gimbel, Administrator v. Smidth* (1856), 7 Ind. 627.

*Id.* at 991. We adopt the analysis used by the Indiana Court of Appeals in *Rosander,* and hold that, absent authorization by the non-injured spouse to settle the consortium claim, settlement of the injured spouse's claim does not bar subsequent prosecution of the loss of consortium claim by the non-injured spouse.

Under facts strikingly similar to the case before us, the Superior Court of New Jersey ruled that a loss of consortium claim is not barred by the settlement of the injured spouse's claim. *Neely v. Kossove,* 198 N.J.Super. 503, 487 A.2d 788 (1984). The *Neely* court addressed the "derivative" issue as follows:

Defendants further contend that plaintiff's claim is derivative and entirely dependent upon her husband's cause of action. Without it her claim may not be prose-

cuted. To conclude that because it is derivative it may not be instituted unless her husband's claim is still actionable would ignore the fact that her claim is a separate and distinct cause of action. Derivative means "come from another—owing its existence to something foregoing." *Black's Law Dictionary* 530 (rev. 4th ed. 1957); thus it is the husband's injury and not his cause of action that accounts for the creation of the wife's right to litigate. To succeed in her action she would still have to establish through credible evidence the liability of the tortfeasor as well as her damage loss. Her right to do so cannot be affected by the injured spouse's release of his claim since her right to a recovery is separate and distinct.

*Id.* 487 A.2d at 789. Following this reasoning, we hold that the non-injured spouse's claim for loss of consortium is vested in the non-injured spouse personally and may only be released by the spouse who owns it. The loss of consortium claimant has separate and independent status as a plaintiff in his/her own right. Accordingly, a derivative claim for loss of consortium is not barred by the settlement and release of the injured spouse's claim. As stated in *Neely,* "[w]ere it otherwise, a husband [or wife] who refuses to litigate for whatever reason could effectively eliminate a claim that is not possessed by him [or her]." *Id.* 487 A.2d at 790.

In the past, courts have expressed concern that allowing a derivative but independent claim for loss of consortium to continue after settlement of the injured spouse's action will create the problems of double recovery and inconsistent verdicts. These concerns, however, are unfounded. The prospect that a knowledgeable insurer, securing a bargain for release, would permit double recovery through payment of a settlement greater than the value of the claims actually released is untenable. Additionally, to prevent double recovery, the loss of consortium claimant is not entitled to recover for loss of support. *See Troue v. Maker,* 253 Ind. 284, 252 N.E.2d 800 (1969). Inconsistent verdicts are not a

problem in the instant situation as a release is not dispositive of the merits of an action. Consequently, under the instant facts, concerns about double recovery and inconsistent verdicts are not worth of consideration. After careful analysis, we find that the non-injured spouse's loss of consortium claim, though derivative, is separate and distinct from the injured spouse's personal injury claim. Therefore, the derivative posture of the consortium claim does not give the injured party the power to waive the rights vested in the non-injured spouse. Settlement of the consortium claim must be expressly authorized by the loss of consortium claimant.

Having ruled that a lawsuit for damages based on a loss of consortium claim may continue despite the settlement of the underlying personal injury claim, we will now address appellants' second contention that the trial court erred by enforcing a settlement agreement where the attorney wrongfully settled the case without first obtaining the consent of his/her client. We find that the trial court correctly relied on our Supreme Court's decision in *Rothman v. Fillette*, 503 Pa. 259, 469 A.2d 543 (1983), which is controlling in such a situation.

In *Rothman*, the Court was confronted with the question of who must bear the burden of loss between two innocent parties where the attorney for one of the parties has acted beyond the scope of his/her authority and has misappropriated the settlement proceeds. The facts of *Rothman* are as follows: Philip Rothman was involved in an automobile accident and, as a result, sustained personal injuries. Rothman retained Irving Madnick, Esquire, to institute suit to recover damages. A complaint was subsequently filed against Gloria and Ronald Fillette. The Fillettes' insurer, Liberty Mutual Insurance Company, agreed to settle the case for $7,000.00. Attorney Madnick accepted the offer without Rothman's authorization, returned a release to Liberty Mutual purportedly signed by Rothman, and absconded with the money. On order of Attorney Madnick, the case was marked settled, discontinued, and ended. Unaware of

these events and believing that his case would eventually go to trial, Rothman maintained contact with his attorney. Five years later, Rothman discovered that his attorney had "settled" the case and misappropriated the the settlement proceeds. Rothman hired new counsel and petitioned the trial court to remove the order marking the case settled, discontinued, and ended. The trial court granted the petition and reinstated Rothman's action against the Fillettes. That ruling was affirmed on appeal by this Court. *See Rothman v. Fillette*, 305 Pa.Super. 28, 451 A.2d 225 (1982).

On appeal to our Supreme Court, Justice Nix (now Chief Justice), writing for the majority, reversed this Court and explained:

The law in this jurisdiction is quite clear that an attorney must have express authority to settle a cause of action of the client. *International Organization Masters, Mates and Pilots of America, Local No. 2 v. International Organization Masters, Mates and Pilots of America, Inc.*, 456 Pa. 436, 318 A.2d 918 (1974); *Archbishop v. Karlak*, 450 Pa. 535, 299 A.2d 294 (1973); *McLaughlin v. Monaghan*, 290 Pa. 74, 138 A. 79 (1927); *Lipschutz v. Lipschutz*, 124 Pa.Super. 380, 188 A. 556 (1936).

The issue that is presented here relates to where the allocation of loss should fall as a result of the agent's unfaithful performance. It must be emphasized that in our judgment both of the parties of this action were innocent and free of any fault. Mr. Rothman in selecting his counsel, a person at that time certified to practice law by this Court had no reason to suspect misconduct. Likewise, the Fillettes and their insurer bargained in good faith with appellee and Mr. Madnick under circumstances that would not reasonably give rise to any inference that counsel was breaching a trust to the client. The Fillettes and their insurer had every reason to believe under the facts presented that the purported settlement had been expressly approved by Mr. Rothman.

Under these circumstances, we believe applicable her the long recognized principle that where one of two

innocent persons must suffer because of the fraud of a third, the one who has accredited him must bear the loss. *Keller v. N.J. Fidelity and Plate Glass Insurance Co.*, 306 Pa. 124, 159 A. 40 (1932); *Mundorff v. Wickersham*, 63 Pa. 87 (1869). As was stated in *Rykaczewski v. Kerry Homes, Inc.*, 192 Pa.Super. 461, 465, 161 A.2d 924, 926 (1960):

> Where one of two innocent persons must suffer, the loss should be borne by him who put the wrongdoer in a position of trust and confidence and thus enabled him to perpetrate the wrong.

Our case law has expressed that a principal acting through an agent in dealing with an innocent third party must bear the consequences of the agent's fraud. *Keller v. N.J. Fidelity and Glass Incurance [sic] Co., supra.; Williams v. Cook, supra; Mundorff v. Wickersham, supra; Rykaczewski v. Kerry Homes, Inc., supra.* In such instances the lack of authority of the agent has been rejected as a basis for shifting the principal's losses onto the innocent third party. *See Keller v. N.J. Fidelity and Glass Insurance Co., supra.; Williams v. Cook, supra; Mundorff v. Wickersham, supra; Rykaczewski v. Kerry Homes, Inc., supra; Himes v. Herr*, 3 Pa.Super. 124 (1896). The fact that the agent has wronged his principal through the agent's unlawful act does not provide a predicate for insulating the principal against the harm caused by the agent at the expenses of the innocent third party who had no responsibility for the conduct of the agent. *See Keller v. N.J. Fidelity and Glass Insurance Co., supra.; Williams v. Cook*, 289 Pa. 207, 137 A. 232 (1927); *Mundorff v. Wickersham, supra; Rykaczewski v. Kerry Homes, Inc., supra.* We believe that this view is consistent with fundamentally sound principals of agency and equity and that there were no other additional factors here present to justify ignoring its applicability.

\*　　\*　　\*　　\*　　\*　　\*

The next step in the analysis must address the question as to whether the unauthorized actions of the agent bars

Rothman's further pursuit of the claim.[4] Logical consistency would not be offended by a finding that although the Fillettes were entitled to a credit for the payment made, the unauthorized settlement should be set aside and Rothman provided an opportunity to establish that the damages exceeded the amount received. However, such a view must be rejected as being inescapably disruptive of established settlement policies.

There is a strong judicial policy in favor of parties voluntarily settling lawsuits. *Pennwalt Corporation v. Plough, Inc.*, 676 F.2d 77 (3d Cir.1982); *Castillo v. Roger Construction Co.*, 560 F.2d 1146 (3d Cir.1977); *Autera v. Robinson*, 136 U.S.App.D.C. 216, 419 F.2d 1197 (1969).

\* \* \* \* \* \*

We cannot design our rules on the assumption that the members of our Bar will participate in criminal behavior. We must rely upon the fidelity of our Bar and in the main, experience has demonstrated the justification for that reliance. Where the unusual and unfortunate case of breach of trust occurs, such as here, we must rely upon the other procedures established in our law to provide punishment and to serve as a deterrent against repetition of such conduct.

> 4. The harshness of this result is to some extent ameliorated by this Court's establishment of a client security fund which was designed to assist clients of defalcating attorneys. Pennsylvania Client Security Fund, Rules of Disciplinary Enforcement, Rule 502 et seq.

*Id.* 503 Pa. at 264–265, 469 A.2d at 545–547 (footnote omitted).

■ Instantly, appellants concede that Mr. Manzitti expressly authorized Attorney Kocsis to settle his personal injury claim.[4] Appellants argue, however, that Mrs. Manzitti did not expressly authorize Attorney Kocsis to settle

4. In their motion for continuance, withdrawal of counsel, and removal from the trial list, however, appellants alleged that Attorney Kocsis, through fraudulent misrepresentation of the value of their claims, convinced Mr. Manzitti to settle his case unwisely. Appellants maintained that Attorney Kocsis intentionally misrepresented the value of the claims to be a maximum of $200,000.00 recovery at trial. This contention, however, is not currently before us for review.

her separate and distinct loss of consortium claim. Even assuming that Mrs. Manzitti did not expressly authorize Attorney Kocsis to settle her claim, the settlement agreement nonetheless was still enforceable.

As in *Rothman,* the parties to this action were innocent and free of fault. Appellees and their insurer had a reasonable belief that the oral settlement agreement had been expressly authorized by both Mr. and Mrs. Manzitti. By failing to obtain Mrs. Manzitti's express consent to settle her claim, Attorney Kocsis acted beyond the scope of his authority and wrongfully settled her claim. Our Supreme Court explained in *Rothman* that " '[w]here one of two innocent persons must suffer, the loss should be borne by him who put the wrongdoer in a position of trust and confidence and thus enabled him to perpetrate the wrong.' " *Id.,* 503 Pa. at 265, 469 A.2d at 545 (*quoting Rykaczewski v. Kerry Homes, Inc.,* 192 Pa.Super. 461, 465, 161 A.2d 924, 926 (1960)). Accordingly, we find that the trial court did not err by enforcing the settlement agreement. We must be mindful that in the rare and unfortunate case where such a breach occurs, as in the instant case, the client "must rely upon the other procedures established in our law to provide punishment and to serve as a deterrent against repetition of such conduct." *Id.* 503 Pa. at 268, 469 A.2d at 547.

Accordingly, the order of the trial court is affirmed.

POPOVICH, J., files concurring and dissenting Opinion.

POPOVICH, Judge, concurring and dissenting:

While I wholeheartedly agree with the majority's learned holding that a lawsuit for damages based on a loss of consortium claim may continue despite the settlement of the underlying personal injury claim, I respectfully dissent from the majority's application of *Rothman v. Fillette,* 503 Pa. 259, 469 A.2d 543 (1983) to enforce the settlement agreement.

In *Rothman,* supra, our Supreme Court unequivocally stated:

At the outset, it must be understood that under the facts of this case there is no question of an implied or an apparent agency. The law in this jurisdiction is quite clear that *an attorney must have express authority to settle a cause of action of the client.* (emphasis added) *International Organization Masters, Mates and Pilots of America, Local No. 2 v. International Organization Masters, Mates and Pilots of America, Inc.,* 456 Pa. 436, 318 A.2d 918 (1974); *Archbishop v. Karlak,* 450 Pa. 535, 299 A.2d 294 (1973); *McLaughlin v. Monaghan,* 290 Pa. 74, 138 A. 79 (1927); *Lipschutz v. Lipschutz,* 124 Pa.Super. 380, 188 A. 556 (1936). *Rothman,* 503 Pa. at 264, 469 A.2d at 545.

However, the Court continued, stating:

Under these circumstances, we believe applicable here the long recognized principle that where one of two innocent persons must suffer because of the fraud of a third, the one who has accredited him must bear the loss. *Keller v. N.J. Fidelity and Plate Glass Insurance Co.,* 306 Pa. 124, 159 A. 40 (1932); *Mundorff v. Wickersham,* 63 Pa. 876, (1869). As we stated in *Rykaczewski v. Kerry Homes, Inc.,* 192 Pa.Super. 461, 465, 161 A.2d 924, 926 (1960):

Where one of two innocent persons must suffer, the loss should be borne by him who put the wrongdoer in a position of trust and confidence and thus enabled him to perpetrate the wrong.

Our case law has expressed that a principal acting through an agent in dealing with an innocent third party must bear the consequences of the agent's fraud. *Keller v. N.J. Fidelity and Glass Insurance Co., supra; Williams v. Cook,* 289 Pa. 207, 137 A. 232 (1927); *Mundorff v. Wickersham, supra; Rykaczewski v. Kerry Homes, Inc., supra.* In such instances the lack of authority of the agent has been rejected as a basis for shifting the principal's losses onto the innocent third

party. *See Keller v. N.J. Fidelity Glass Insurance Co.,
supra; Williams v. Cook, supra; Mundorff v. Wickers-
ham, supra; Rykaczewski v. Kerry Homes, Inc., supra;
Himes v. Herr,* 3 Pa.Super. 124 (1896). The fact that the
agent has wronged his principal through the agent's
unlawful act does not provide a predicate for insulating
the principal against the harm caused by the agent at the
expense of the innocent third party who had no responsi-
bility for the conduct of the agent. *Keller v. N.J. Fideli-
ty and Glass Insurance Co., supra; Williams v. Cook,
supra; Mundorff v. Wickersham, supra, Rykaczewski v.
Kerry Homes, Inc., supra.* We believe that this view is
consistent with fundamentally sound principals of agency
and equity and that there were no other additional factors
here present to justify ignoring its applicability. *Roth-
man,* 503 Pa. at 265, 469 A.2d at 545–546.

Applying this rationale, the Supreme Court reversed our
affirmance of the lower court's decision.[1] Clearly, the two
passages from the Supreme Court's decision quoted above
are inconsistent, and, consequently, the legal effect of the
*Rothman* opinion is vitiated by that inconsistency.

I am bemused by the Supreme Court's application of
agency by estoppel in the context of an attorney-client
relationship. Normally, "[a]uthority by estoppel occurs
when a principal by his culpable negligence, permits an
agent to exercise powers not granted to him, even though
the principal did not know or have notice of the agent's
conduct." *Apex Financial Corp. v. Decker,* 245 Pa.Super.
439, 369 A.2d 483, 486 (1976); *Reifsnyder v. Dougherty,*
301 Pa. 328, 152 A. 98 (1930). Obviously, the logical conse-
quence of applying that principal of "agency law" to the
*Rothman* facts is to overrule prior Pennsylvania case law
and to establish, as Pennsylvania law, the rule that settle-

1. In *Rothman v. Fillette,* 305 Pa.Super. 28, 451 A.2d 225 (1982), we
held that, absent express authority from the client, an attorney cannot
compromise his client's claim, release his cause of action or settle
litigation. Thus, we affirmed the lower court's holding that the
settlement agreement entered into by Mr. Rothman's attorney without
his express authority was unenforceable.

ment of a client's cause of action by his attorney is enforceable against the client where the attorney had either express, apparent or implied authority to settle. I, however, do not believe our Supreme Court intended such a result, since prior Pennsylvania case law regarding the need for express authority to create an enforceable settlement was not expressly overruled, and, in fact, precisely that case law was cited in support of the court's decision.

Though I am unable to explain the conundrum that the *Rothman, supra,* creates, I assume that our Supreme Court did not intend to depart from the long established Pennsylvania tradition which mandates invalidation of the settlement or release of a claim by an attorney not expressly authorized by his client so to do. And indeed, the Supreme Court, in citing *Archbishop v. Karlak, supra,* and *McLaughlin v. Monaghan, supra, inter alia,* reinforced that very principle. Inexplicably, however, the Supreme Court proceeded to depart from its own statement of the law, applying "fundamentally sound principles of agency and equity," to enforce a settlement where there was admittedly no express authority to settle. Clearly, Pennsylvania case law commands that "principle of agency and equity" do not apply when adjudicating an attorney's unauthorized settlement of a client's claim. Therefore, I would follow the mandate of prior case law as stated in *McLaughlin v. Monaghan, supra:*

> An attorney as such cannot release a client's cause of action ..., or surrender his substantial rights in whole or in part ..., or compromise or settle his client's litigation, without special authority so to do. *McLaughlin,* 138 A. at 80.

*See also Archbishop, supra,* 299 A.2d 294 (1973); *International Organization Masters, Mates and Pilots of America, Local No. 2 v. International Organization Masters, Mates and Pilots of America, Inc., supra,* 456 Pa. 436, 318 A.2d 918 (1974); *Tucker v. Tucker,* 370 Pa. 8, 87 A.2d 650 (1952); *Starling v. West Erie Avenue Building & Loan Association,* 333 Pa. 124, 3 A.2d 387 (1939); *Lipschutz v.*

*Lipschutz, supra,* 188 A. 556 (1936); *Garnet v. D'Alonzo,* 55 Pa.Cmwlth.Ct. 263, 422 A.2d 1241 (1980).

Moreover, the Court of Appeals for the Third Circuit, in *Garabedian v. Allstates Engineering Co.,* 811 F.2d 802 (3rd Cir.1987), recently held:

> In general, an attorney has no authority to settle his client's case solely by virtue of his general power to handle the case. *Holker v. Parker,* 11 U.S. (7 Cranch) 436, 452, 3 L.Ed. 396 (1813). Instead, an attorney can only enter a binding compromise if the client has authorized him to do so. While there is a presumption that a settlement entered into by an attorney has been authorized by the client, rebuttal of the presumption renders any purported settlement ineffective. *See generally, Annotation, Authority of Attorney to Compromise Action,* 30 ALR2d 944 (1953). *Garabedian, supra,* 811 F.2d at 803.

*See also Smith v. Delaware Valley Auto Spring Co.,* 642 F.Supp. 1112, 1115 (E.D.Pa.1986) (cited *Rothman, supra,* 469 A.2d 543 for the sole proposition that an attorney must have express authority to settle).

Instantly, the lower court concluded that paragraphs 11 and 12 of the appellants' brief (quoted in the majority opinion) constituted judicial admissions of both appellants' express authorization of settlement. However, even a cursory review of those "admissions" clearly reveals that neither statement was an admission by Mrs. Manzitti of her express authorization to settle. As the above discussion indicates, I would apply to the case *sub judice* only that portion of *Rothman, supra,* which states: "The law in this jurisdiction is quite clear that an attorney must have express authority to settle a cause of action of the client. (citations omitted)." *Rothman,* 503 Pa. at 264, 469 A.2d at 545. Therefore, I would find that, if Mrs. Manzitti did not expressly authorize Attorney Kocsis to settle her claim, then the settlement agreement is unenforceable as the appellees' offer was to settle both appellants' claims not merely that of Mr. Manzitti. Instantly, Mrs. Manzitti con-

474

tends that she did not authorize her attorney to settle her loss of consortium claim. Consequently, I would remand the case for an evidentiary hearing on the question of whether Patricia Manzitti gave Attorney Kocsis her express authority to settle her claim.