Steven A.B. HANNINGTON, Appellant

v.

TRUSTEES OF the UNIVERSITY OF PENNSYLVANIA and Dr. Mark Bernstein, Appellees.

Superior Court of Pennsylvania.

Argued June 25, 2002.

Filed Oct. 11, 2002.

Jeffrey S. Saltz, Philadelphia, for appellant.

Jane B. LaPorte, Philadelphia, for appellees.

Before: LALLY–GREEN, OLSZEWSKI, and POPOVICH, JJ.

LALLY–GREEN, J.:

¶ 1 Appellant, Steven A.B. Hannington, appeals the denial of his motion to restore his case to trial list. We affirm.

¶ 2 The facts as stated by the trial court are as follows:

In May, 1999, Appellant, the plaintiff in the underlying action, filed a complaint seeking legal and equitable relief for alleged breach of contract and unjust enrichment that occurred while [A]ppellant was a Ph.D. candidate in the Energy Management and Policy Program at The University of Pennsylvania ( [the University] ). According to [A]ppellant, the University agreed to waive all of his tuition in the Ph.D. program in exchange for [A]ppellant's role in organizing and planning a two-day conference that took place in March of 1992 on behalf of the University's Energy Management and Policy Program. Three years later, in June 1995, [A]ppellant was terminated from the Ph.D. program for failure to pay outstanding tuition fees. Appellant sued the University, alleging that there was an agreement for a complete waiver of all tuition and other fees related to his Ph.D. candidacy and the University counter-sued for the outstanding tuition, other fees and interest. The case was scheduled to be placed in the August 7, 2000 trial pool. At a July 25, 2000 settlement conference before the Court, the parties' attorneys represented that they were close to resolving the case and requested a delay in listing the case for trial because both sides believed a settlement was imminent. Resolution of the claim involved [A]ppellant paying to [the University] the outstanding tuition less one-year's tuition that [the University] agreed to waive. In exchange, [A]ppellant would be reinstated to the University's Ph.D. program after the University assembled a dissertation committee to oversee [A]ppellant's doctoral studies. The attorneys for both parties began working out the details of the settlement and mutual release agreement after they reached a settlement in late September 2000. Between September and December 2000, the parties exchanged a number of drafts of the settlement and mutual release agreement until the written document satisfactorily addressed what both parties had agreed to in September. On November 13, 2000, [A]ppellant's counsel forwarded one of the revised drafts to [the University's] counsel, informing her that [A]ppellant had agreed to the contents of the release. On December 14, 2000, [A]ppellant's counsel forwarded to [the University's] counsel a finalized version of the settlement and mutual release agreement and confirmed that

the case was settled. Appellant's counsel then notified the Court that a final settlement had been reached and proceeded to file an Order to Settle, Discontinue and End with the Prothonotary. However, the Order to Settle, Discontinue and End did not include the University's counterclaim and as a result, the filing was returned to [A]ppellant's counsel. A new Order to Settle, Discontinue and End was prepared, signed and forwarded by the University's attorney to [A]ppellant's counsel. In January 2001, [A]ppellant's counsel notified the University's counsel that [A]ppellant had refused to sign the final settlement and mutual release agreement. Appellant obtained new counsel and the instant Motion was filed with the Court. Following this Court's denial of [Appellant's] Motion to Restore the Case to the Trial List, and in accordance with Pennsylvania Rules of Appellate Procedure 1925(b), this Court received [Appellant's] Statement of Issues on Appeal on July 30, 2001.

Trial Court Opinion, 2/13/02, 1–3. (citations and footnotes omitted).

¶ 3 Appellant presents two issues for our review:

I. Where an attorney agrees to the settlement of a pending lawsuit without the express authority of his client, is the client nevertheless bound by the settlement on the basis of attorney's "apparent authority"?

II. Was a factual dispute presented to the lower court on the attorney's authority to agree to a settlement, so as to require the lower court to conduct an evidentiary hearing?

Appellant's Brief at 3.

■ ¶ 4 Our standard of review of a trial court's grant or denial of a motion to enforce a settlement agreement is plenary, as the challenge is to the trial court's conclusion of law. *Kramer v. Schaeffer*, 751 A.2d 241, 245 (Pa.Super.2000). "We are free to draw our own inferences and reach our own conclusions from the facts as found by the trial court." *Bennett v. Juzelenos*, 791 A.2d 403, 406 (Pa.Super.2002). "However, we are only bound by the trial court's findings of fact which are supported by competent evidence." *Id.*

¶ 5 Appellant argues that the doctrine of apparent authority does not apply to the present case because a lawyer must have his client's express approval to settle a case. In other words, Appellant argues that the settlement agreement is unenforceable because Appellant's lawyer did not have express authority to settle, regardless of whether the University reasonably believed that counsel had such authority.

■ ¶ 6 The doctrine of apparent authority permits a settlement agreement to be enforced where a third party reasonably believes that the principal's lawyer, the agent, had the authority to settle the case even though the lawyer fraudulently represents that he has such authority. *Rothman v. Fillette*, 503 Pa. 259, 469 A.2d 543, 545 (1983). In *Rothman*, the plaintiff's lawyer settled the plaintiff's case without the plaintiff's express consent, and forged the plaintiff's signature on the release and on the check from the defendants' insurer.

¶ 7 The *Rothman* Court ruled that, even though plaintiff's lawyer committed a fraud on plaintiff, plaintiff's lawyer had the apparent authority to settle with the innocent opposing party. *Id.* at 546. The Court reasoned that since the plaintiff had accredited his lawyer, he must bear the loss and cannot use the agent's lack of authority as a basis for shifting the princi-

pal's losses onto the innocent third party.[1] *Id.* at 546. The Court emphasized that the fact that the agent has wronged his principal does not insulate the principal *vis a vis* the innocent third party who had no responsibility for the agent's conduct. *Id.* at 546.

¶ 8 The Court observed that the third party in that case had no reason to suspect misconduct or that the lawyer was not authorized by his client to settle. *Id.* at 545. The Court held that the third party, the insurer, had every reason to believe that the plaintiff had authorized the settlement. *Id.* at 545. The Court specifically rejected various suggested methods for an insurer to verify that the lawyer had obtained the client's consent to settle the case. *Id.* at 547. The Court stated that there is a strong judicial policy in favor of parties voluntarily settling lawsuits and that the suggested methods for ascertaining a lawyer's authorization to settle the case would be "impractical and of little utility for the objectives sought to be achieved." *Id.* at 546–547. Therefore, since the insurer bargained in good faith with the plaintiff's lawyer and since, under the circumstances, the insurer had no reason to believe that the plaintiff's lawyer was breaching the plaintiff's trust, the insurer reasonably believed that the lawyer had the plaintiff's authority to settle the case. *Id.* at 545. Therefore, the Court held that the settlement agreement was enforceable against the plaintiff. *Id.* at 546.

¶ 9 Our Court has also made clear that the doctrine of apparent authority applies to permit a settlement agreement to be enforced where a third party reasonably believes that the principal's lawyer, the agent, had the authority to settle the case even where the lawyer does not have express authority to settle. *Manzitti v. Amsler,* 379 Pa.Super. 454, 550 A.2d 537 (1988), *affirmed without opinion,* 524 Pa. 587, 574 A.2d 601 (1990). In *Manzitti,* the plaintiffs' lawyer negotiated a settlement with the defendants' insurer. The plaintiffs' lawyer indicated to the insurer that the lawyer had authority to settle the case for the plaintiffs. The attorney then accepted the insurer's settlement offer. The plaintiffs refused to sign the settlement agreement, and the insurer sought enforcement of the agreement.

¶ 10 This Court held that the settlement agreement was enforceable against the plaintiffs, reasoning that:

> As in *Rothman,* the parties to this action were innocent and free of fault. [The defendants] and their insurer had a reasonable belief that the oral settlement agreement had been expressly authorized by both Mr. and Mrs. Manzitti. By failing to obtain Mrs. Manzitti's express consent to settle her claim, [the plaintiffs' attorney] acted beyond the scope of his authority and wrongfully settled her claim. Our Supreme Court explained in *Rothman* that where one of two innocent persons must suffer, the loss should be borne by him who put the wrongdoer in a position of trust and confidence and thus enabled him to perpetrate the wrong. Accordingly, we find that that the trial court did not err by enforcing the settlement agreement. We must be mindful that in the rare and unfortunate case where such a breach occurs, as in the instant case, the client must rely upon the other procedures established in our law to provide punish-

---

1. The Court noted that "the harshness of this result is to some extent ameliorated by this Court's establishment of a client security fund which was designed to assist clients of defalcating attorneys." *Id.* at 546 n. 4.

ment and to serve as a deterrent against repetition of such conduct.

*Id.* at 544 (citations omitted).

¶ 11 In Appellant's case, the trial court found that Appellant and the University had reached an oral settlement agreement. Trial Court Opinion, 2/13/02, at 3. Specifically, the trial court applied the doctrine of apparent authority to enforce the oral settlement agreement against Appellant because Appellant's counsel had represented to the University that Appellant had agreed to the contents of the release as written in November of 2000. *Id.* at 4.

¶ 12 Our review of the record supports the trial court's conclusions. First, the University is innocent and free from fault. Second, the University and its lawyer reasonably believed that Appellant's lawyer had the authority to settle the case. *See,* Letter dated October 19, 2000 from the University's lawyer to Appellant's lawyer and Letter dated November 13, 2000 from Appellant's lawyer to the University's lawyer wherein Appellant's lawyer stated "[Appellant] has agreed to the contents of the release as attached."

¶ 13 Third, the record reflects that Appellant, the University had been negotiating since July of 2000, and that Appellant had clothed his lawyer with the authority to communicate with the University on his behalf.[2] Therefore, it was reasonable for the University and its lawyer to believe that Appellant had expressly authorized the settlement agreement.

¶ 14 Appellant also alleges that his lawyer exceeded the scope of his authority by settling the case. The record appears to belie this contention.[3] Even if Appellant is correct, then, under the facts of this case, the doctrine of apparent authority applies to enforce the settlement agreement. If Appellant's lawyer did not exceed the scope of his authority, then the settlement agreement is enforceable on its own. Therefore, the outcome of this case does not depend on the truth of Appellant's allegation. Rather, since the University had a reasonable belief that Appellant had authorized the settlement, the doctrine of apparent authority is applicable to enforce the settlement agreement in this case.[4] Appellant's claim fails.

2. We observe that communications between Appellant and his lawyer were apparently not always clear or unambiguous. The record reflects that Appellant corresponded with his lawyer by email on October 6, 2000, with comments regarding the "paltry offer" of the University's position and by letter of October 10. Appellant's lawyer contacted Appellant by email on October 24 and by fax on November 13, 2000, regarding the settlement. Then, the lawyer contacted Appellant by email on December 1. On December 15, 2000, the lawyer emailed Appellant and attached for Appellant's signature the final version of the settlement agreement and release.

It was not until January 9, 2001, that Appellant communicated to counsel his disapproval. This was over a month after the University and lawyer both believed that a settlement agreement had been achieved. Such belief on Appellant's lawyer's part is reflected in the lawyer's notification to the Court on Decem-

ber 23, 2000, that a final settlement had been reached and his filing of an order to discontinue and settle with the Prothonotary.

3. *See* note 2, *supra.*

4. We note this Court's decision in *Bennett v. Juzelenos,* 791 A.2d 403 (Pa.Super.2002). In *Bennett,* the plaintiffs expressed their disapproval of the settlement negotiations to their lawyer. The plaintiffs' son, however, instructed the lawyer to settle the case. The plaintiffs' lawyer settled the case based upon his belief that the plaintiffs' son possessed authority to authorize settlement. This Court applied the doctrine of apparent authority, but held that under the circumstances of the case, the doctrine did not render the settlement agreement enforceable. This Court reasoned that the plaintiffs' lawyer was well aware that the plaintiffs disapproved of the settlement negotiations. Also, this Court reasoned that the plaintiffs' lawyer could not possess a reason-

 

¶ 15 Next, Appellant argues that the doctrine of apparent authority improperly subsumes the rule that an attorney must have his client's express consent prior to settling a case. As our Supreme Court stated in *Rothman:*

> We cannot design our rules on the assumption that the members of our Bar will participate in criminal behavior. We must rely upon the fidelity of our Bar and in the main, experience has demonstrated the justification for that reliance. Where the unusual and unfortunate case of breach of trust occurs, ... we must rely upon the other procedures established in our law to provide punishment and to serve as a deterrent against repetition of such conduct.

*Rothman,* 469 A.2d at 547.

¶ 16 We will not presume that members of our Bar will disregard the requirement that they must obtain their clients' express consent prior to settling a case. The doctrine of apparent authority exists for the rare instances when a client alleges, as here, that his lawyer settled his case without his express consent.[5]

¶ 17 Finally, Appellant requests that this Court remand this case for an evidentiary hearing on whether Appellant expressly consented to the settlement of the case. Appellant argues that a hearing should have been held because the trial court should have answered the factual question as to whether Appellant had expressly consented to the settlement. We decline Appellant's request because, as stated above, using the doctrine of apparent authority, the trial court properly enforced the settlement agreement. Therefore, an evidentiary hearing on this factual question is unnecessary.

¶ 18 Order affirmed.

able belief that the plaintiffs had authorized their son to order the case settled. Therefore, this Court held that while the doctrine of apparent authority was applicable, under the circumstances of the case, the doctrine did not require enforcement of the settlement agreement.

In Appellant's case, the concern is the reasonable belief of a third party, namely the University. Unlike the attorney in *Bennett* who could have contacted his clients to verify their son's authority to settle the case, the University's lawyer could not have contacted Appellant directly due to ethical constraints. The University's lawyer could only deal with Appellant's lawyer. *Bennett* is not controlling.

5. A client who makes such an allegation may pursue a cause of action against his counsel. The credible threat of such a cause of action should sufficiently deter an attorney from violating that rule of representation.