**BERKHEIMER ASSOCIATES, AGENT FOR NORTH COVENTRY TOWN-SHIP and Owen J. Roberts School District, Appellant**

v.

**NORCO MOTORS.**

Commonwealth Court of Pennsylvania.

Argued Nov. 3, 2003.

Decided Jan. 16, 2004.

Reargument Denied March 18, 2004.

John Molnar, Wind Gap, for Appellant.

Stephen H. Kalis, Pottstown, for Appellee.

BEFORE: LEADBETTER, Judge, SIMPSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Berkheimer Associates, Inc. (Berkheimer) agent for North Coventry Township (Township) and Owen J. Roberts School District (District) appeals three decisions of the Court of Common Pleas of Chester County (trial court). The effect of the court's decisions required Berkheimer to execute a settlement and release agreement with Norco Motors (Norco), thereby purportedly binding District and Township to its terms. We affirm in part and reverse and remand in part.

Berkheimer is the duly authorized collector of privilege/mercantile taxes levied pursuant to the Local Tax Enabling Act, having been duly appointed by the Township and District by way of formal resolution adopted by the respective governing bodies.[1]

On March 26, 1999 Berkheimer filed a complaint against Norco alleging that Norco failed to provide payment in full for mercantile tax owed for the years 1990 through 1997 inclusive. Berkheimer alleged that Norco reported only those monies generated through its parts and service departments but failed to include those monies generated through sales of its new and used vehicles. Thereafter, the parties engaged in negotiations towards a settlement.

On December 15, 1999 Berkheimer filed a petition to amend the complaint seeking to recover additional taxes for the years 1986 through 1989. Norco filed an answer denying the factual allegations and objecting to the amended complaint. The parties again engaged in negotiations.

In a letter dated April 3, 2000, the parties were notified by the trial court that an administrative status conference would be held on April 27, 2000. On April 24, 2000, Stephen Kalis, attorney for Norco, called Berkheimer attorney David Gordon and advised him that based on his discussion with Township attorney Kevin Hennessey, the parties were in agreement on key settlement terms. That same day Kalis telecopied a letter to Gordon and mailed cop-

---

1. Act of December 31, 1965. P.L. 1257, *as amended*, 53 P.S. §§ 6901–6924.

ies to Township attorney Hennessey and District attorney Clarence Kegel, enclosing a proposed settlement agreement and release.

Berkheimer counsel Gordon then called the trial court's chambers informing a law clerk that it was understood that the parties were in agreement on key settlement terms. The law clerk informed Gordon to write a letter informing the court of the negotiations.[2] On April 25, 2000 Gordon sent a letter to the law clerk stating the following:

> [T]his is to confirm our telephone conversation of today, April 25, 2000, that the telephone conference scheduled for Tuesday, April 27, 2000 at 8:30 a.m. is cancelled because the parties have reached a settlement in principle in the matter. Counsel for the parties, including the solicitors for the respective taxing bodies, North Coventry Township and the Owen J. Roberts School District, are in the process of refining a draft settlement agreement and release recently put together by Stephen H. Kalis, Esq., counsel for Norco.

(R.R. at 440a.) This letter was also sent to District attorney Kegel and Township attorney Hennessey but not to Norco attorney Kalis.

During the six months that followed, the parties engaged in numerous revisions to the settlement and release agreement such that there were a total of 5 proposed agreements. All proposed agreements contained signature lines for Berkheimer, Norco, Township and District. On October 23, 2000, the School Board met to discuss the proposed settlement agreement and taking into consideration the recommendation of the Tax Advisory Committee, decided to reject the latest settlement proposal, Draft # 5.[3] On October 24, 2000, District's attorney, Kegel, sent a letter to Berkheimer and Township legal counsel indicating that the School Board did not wish to further discuss settlement and directing Berkheimer to proceed with the litigation to collect the tax owed.

On December 8, 2000 Berkheimer took steps to move the case forward by asking the trial court to rule on its petition to amend complaint to include tax years 1986 through 1989. On December 20, 2000, the trial court issued Decision # 1 wherein it denied amendment of the complaint. In a footnote, the trial court referenced the letter sent to the court dated April 25, 2000 whereby counsel for Berkheimer informed the court that "the parties have reached a settlement in principle in the matter." The trial court stated that in light of the April 25, 2000 letter, a petition to enforce settlement was appropriate.

Thereafter, on March 2, 2001 Norco filed a petition to enforce settlement wherein it claimed that a settlement agreement was created by various actions. On March 2, 2001 the court issued a rule to show cause directing Berkheimer to file an answer within 10 days and that the petition be decided under Pa. R.C.P. No. 206.7 and ordered that discovery be completed within 10 days of receipt of the answer.

The trial court conducted oral argument on the petition on May 23, 2001 and issued Decision # 2. The order acknowledged

---

2. According to Gordon's testimony the law clerk also informed him that the parties had approximately 30 days within which to settle the case or the litigation would proceed and the case would be scheduled for trial. (R.R. at 282a.) Gordon also conveyed this 30 day time limit to Kegel and Hennessey in a letter dated April 28, 2000. (R.R. at 441a.)

3. Among other items, School Board was apparently upset because in paying its 1999 mercantile taxes, Norco again failed to report money earned on the sale of vehicles.

that discovery had not been completed as directed by its order of March 2, 2001. Nonetheless, the court again ordered the parties to conduct discovery. Thereafter depositions were taken in June 2001.

On October 18, 2002, the trial court entered Decision # 3 granting Norco's petition to enforce settlement and directed Berkheimer and Norco to sign the proposed settlement agreement, Draft # 5.

On March 10, 2003, the trial court issued an opinion pursuant to Pa. R.A.P.1925. In its opinion, the trial court observed that the Township and District are not parties to the case and that Berkheimer is the recognized agent for both. The trial court noted that the parties represented to the court on April 25, 2000 that they had reached a settlement in principle, after having received the initial draft of the settlement agreement from Norco and informed the court that the parties were refining the agreement. Neither Berkheimer, Norco, District nor Township informed the court that there was an issue with regard to the settlement for approximately 7 and 1/2 months after representing a settlement to the court. The trial court relied on the representation that a settlement had been reached and concluded that it must have the ability to control its court calendar.

█ The trial court further stated that settlement is a favored judicial policy and given that the record reflects that the settlement agreement was agreed to by Berkheimer and Norco, it ordered that Berkheimer and Norco execute Draft # 5. This appeal followed.[4]

The first issue we will address is whether the trial court erred in issuing Decision # 3 wherein it granted Norco's petition to enforce settlement and directed Berkheimer and Norco to execute the settlement and release agreement dated October 9, 2000.

█ For the reasons that follow, we agree with Berkheimer that because the School Board did not approve the settlement, it cannot be enforced.

█ In accordance with Section 508 of the Public School Code, 24 P.S. § 5–508, to enter into a contract of any kind which exceeds one hundred dollars "[t]he affirmative vote of a majority of all member of the board of school directors in every school district, duly recorded, showing how each member voted, shall be required...."[5] That section further provides that "[f]ailure to comply with the provisions of this section shall render such acts of the board of school directors void and unenforceable." For a board of school directors to execute a contract on behalf of a school district, it must comply with the applicable provisions of the Public School Code setting forth the manner by which a contract may be executed. *Hazleton Area School District v. Krasnoff,* 672 A.2d 858 (Pa.Cmwlth.1996), *petition for allowance of appeal denied,* 538 Pa. 677, 649 A.2d 677 (1994).

Here, the School Board did not approve the settlement agreement at issue and in accordance with the Public School Code it is void and unenforceable. Nonetheless the trial court determined and Norco argues that Berkheimer as the agent for the School District had the authority to enter

---

4. When reviewing a trial court's decision to enforce a settlement agreement, our review is plenary as to questions of law. The appellate court can draw its own inferences and reach its own conclusions from the record and the facts found by the trial court. However, we are bound by the trial court's findings which

are supported by substantial evidence. *Bennett v. Juzelenos,* 791 A.2d 403 (Pa.Super.2002).

5. Act of March 10, 1949, P.L. 30, § 508, *as amended,* 24 P.S. § 5–508.

into a settlement. Whether Berkheimer had actual authority or apparent authority, Norco argues that enforcement of the settlement agreement is proper. Additionally, Norco maintains that a settlement agreement is enforceable even where an attorney settles a case without first obtaining the consent of his client.

Specifically, in *Manzitti v. Amsler*, 379 Pa.Super. 454, 550 A.2d 537 (1988), *aff'd*, 524 Pa. 587, 574 A.2d 601 (1990) counsel for the plaintiff filed a medical malpractice action against the defendant and also filed a claim for loss of consortium on behalf of the plaintiff's wife. The plaintiff's counsel settled the case with the defendant's insurance carrier which included a resolution of the consortium claim. The plaintiff and his spouse, however, refused to sign the settlement agreement arguing that the attorney lacked express authority to settle both claims.

The court determined that the settlement agreement was enforceable regardless of whether the attorney had husband's and wife's express authority to settle the claims. Even though the attorney may not have had the wife's authority to settle the claim and the attorney acted outside of his authority, where one of two innocent parties must suffer, the loss is placed on the individual who put the wrongdoer in a position of trust and confidence and thus afforded him the opportunity to commit the wrong.

In *Hannington v. Trustees of the University of Pennsylvania*, 809 A.2d 406 (Pa.Super.2002), the appellant refused to sign a settlement agreement after appellant's counsel had informed the University that the case was settled and also informed the court that a settlement had been reached and proceeded to file an order to settle and discontinue with the prothonotary. Appellant later hired new counsel which sought to restore the case to the trial list.

Appellant argued that his attorney did not have express authority to settle the case regardless of whether or not the University believed that he did. The court determined, however, that his attorney had been negotiating with the University for months and the University reasonably believed that appellant's attorney had the authority to settle the case. Because the University had a reasonable belief that appellant's attorney had authorized the settlement, the doctrine of apparent authority applied to enforce the settlement agreement.

Here, Norco argues and the trial court determined that Norco was never informed that Berkheimer lacked authority to settle the instant action. Neither the District nor Township ever informed Norco that Berkheimer did not have the authority to settle. Indeed, Berkheimer represented to the trial court via its April 25, 2000 correspondence that the case was settled. Norco argues that it relied on the representation that Berkheimer had the authority to settle and the settlement agreement should be enforced here, like in *Manzitti* and *Hannington*.

We observe, however, that the cases relied on by Norco and the trial court do not involve a school district where a statute puts all persons dealing with it on notice that contracts over $100.00 require approval of the school board. Berkheimer directs this court to *School District of Philadelphia v. Framlau Corp.*, 15 Pa.Cmwlth. 621, 328 A.2d 866 (1974), wherein after 6 days of trial, the parties entered into settlement discussion in the presence of the court. The school district attorney spoke to the school board president, who approved the settlement but noted that school board approval would be required. The trial court dismissed the jury stating the case was settled.

At a public meeting, the school board rejected the settlement and the party in

dispute with the school district petitioned to enforce the settlement. This court determined that the school district was not bound by the settlement agreement because it was never approved at a public meeting by the school board.

Additionally, in *Hazleton Area School District v. Krasnoff*, 672 A.2d 858 (Pa. Cmwlth.1996), *petition for allowance of appeal denied*, 546 Pa. 670, 685 A.2d 548 (1996), an architect entered into a contract with the school district to perform renovations. Thereafter, based on meetings with several school board members, the architect provided services which went beyond the scope of his original contract. The architect sought payment for the additional services performed.

This court determined that Section 508 of the Public School Code applied to the claim for additional services, and as such, approval by an affirmative vote of the school board was required. Although the architect argued that he had the approval of a majority of the school board, this court observed that the individual school board members could not have bound the school district absent majority approval. Citing *Matevish v. Ramey Borough School District*, 167 Pa.Super. 313, 74 A.2d 797 (1950), this court further stated that an individual member of the school board, even if she had apparent authority to act, could not bind the school district if her actions were not authorized by a majority of the school board.

■ Here, there is nothing in the record to show that a majority of the School Board approved the settlement agreement. In fact, the School Board decided not to accept the settlement agreement and instead chose to pursue its legal claim against Norco. Although Norco argues that Berkheimer had authority or apparent authority to settle the case on behalf of the School Board, as stated in *Framlau*, "[t]he

comprehension that only a conditional settlement was reached by the parties and that by law the Board of Public Education, not its president or attorney, had to take action to reach a settlement becomes the legal starting and finishing point of this case." *Framlau*, 328 A.2d at 869. In cases such as this, where there is an absence of approval of settlement terms by the School Board at a public meeting, there can be no binding agreement upon the District. Any apparent authority of its agents or officers is statutorily tentative and contingent upon further approval from the school board. Persons relying on agreements with an agent of the school district without first obtaining approval by a vote of the majority of the members at a public meeting do so at their peril.

■ Because of our determination that the settlement agreement is not enforceable upon District absent School Board approval, we also determine that the trial court erred in issuing the order of December 20, 2000 wherein it denied Berkheimer's petition to amend its complaint to include tax years 1986 through 1989. Although Norco did not raise the issue, the trial court denied the petition to amend reasoning that because the parties had reached a settlement in principle, the filing of a petition to enforce was appropriate. However, inasmuch as we have determined that the settlement agreement is not enforceable against the District absent approval by a majority of the School Board, and no such approval was given in this case, Berkheimer shall be permitted to amend his complaint. Allowing Berkheimer to amend the complaint is proper inasmuch as the amendments of complaints should be allowed with great liberty absent a proper and compelling ground. *Gutierrez v. Pennsylvania Gas & Water Co.*, 352 Pa.Super. 282, 507 A.2d 1230 (1986).

■ Finally, we will address whether the trial court erred in issuing Decision

# 2, wherein it ordered discovery rather than proceeding pursuant to Pa. R.C.P. 206.7.

The petition to enforce settlement presented to the court by Norco, claiming a settlement had occurred also included a proposed order requiring that "Discovery shall be completed within ten (10) days of the service upon Petitioner of the Answer to a petition." The trial court in fact issued a rule to show cause on March 2, 2001 directing the parties to proceed pursuant to Pa. R.C.P. No. 206.7 and complete discovery within 10 days of receipt of the answer. Berkheimer filed a timely answer to the petition. Norco, however, did not take depositions within the 10 day limit set.

Berkheimer claims that because Norco did not take depositions within the required time pursuant to Pa. R.C.P. No. 206.7 the case should have been decided on the petition and answer. Berkheimer argues that if the court specifies a time for taking depositions and the parties fail to take depositions, all averments of fact responsive to the petition must be accepted as facts. *Kine v. Forman,* 404 Pa. 301, 172 A.2d 164 (1961).

We observe that Pa. R.C.P. No. 206.7 provides in pertinent part:

Procedure After Issuance of Rule to Show Cause

. . . .

(c) If an answer is filed raising disputes issues of material fact, the petitioner may take depositions on those issues, or such other discovery as the court allows, within the time set forth in the court order. If the petitioner does not do so, the petition shall be decided on petition and answer and all averments of fact responsive to the petition and properly pleaded in the answer shall be deemed admitted for the purpose of this subdivision.

Here, there is no dispute that Norco filed a petition to enforce. Berkheimer filed an answer, yet Norco failed to conduct discovery within the time limit set by the trial court. Although Berkheimer argues that the trial court should then have decided the case based on the petition and answer, Berkheimer did not file a praecipe for determination. Under Chester County Rule of Civil procedure 206.1B, governing petition practice, the following procedure is mandated for situations such as the present:

When an answer has been timely filed and the issue raised by the petition is ripe for consideration, *pursuant to the provisions of Pa. R.C.P. 206.7 any party may file a praecipe for determination in the form prescribed by C.C.R.C.P. 206.2* along with a supporting brief. If a petitioner files a praecipe for determination on petition and answer, all averments of fact responsive to the petition and properly pleaded in the answer shall be deemed admitted. If a respondent orders the matter for argument on petition and answer without having taken depositions or such other discovery as the court may have allowed, then all averments of facts properly pleaded in the petition shall be deemed admitted for the purposes of the rule, unless the petitioner shall have failed to take depositions or such other discovery as the court may have allowed within the time required, in which event the petition shall be decided on petition and answer. . . .

Here, neither Norco nor Bernheimer filed a praecipe for determination. Given that the proper procedure was not followed inasmuch as a praecipe for determination was not filed, we find no error in the trial court ordering the taking of depositions rather than deciding the petition based on the petition and answer.

In accordance with the above, we affirm the trial court's order of May 23, 2000

which directed the parties to take depositions. We reverse the order of October 18, 2002, which granted Norco's petition to enforce settlement. We also reverse the trial court's order dated December 20, 2000 denying Berkheimer's petition to amend complaint and remand the case to the trial court.

## ORDER

Now, January 16, 2004, the trial court's order dated May 23, 2001 is affirmed. The trial court's order dated October 18, 2002, which granted Norco's petition to enforce settlement is reversed. We also reverse the trial court's order dated December 20, 2000 denying Berkheimer's petition to amend complaint and remand the case to the trial court.

Jurisdiction relinquished.