

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-20-2004

# Covington v. Cont Gen Tire Inc

Precedential or Non-Precedential: Precedential

Docket No. 03-3059

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Covington v. Cont Gen Tire Inc" (2004). *2004 Decisions.* Paper 362.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/362

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF
APPEALS
FOR THE THIRD CIRCUIT

No: 03-3059

MARY LOU COVINGTON; HARRY
COVINGTON, her husband,

Plaintiffs
v.

CONTINENTAL GENERAL TIRE,
INC.; SEARS ROEBUCK AND CO.,

Defendants and Third Party Plaintiffs

v.

EMMA JEAN WILLIAMS,

Third Party Defendant

(D.C. Docket No. 00-cv-01258)

EMMA JEAN WILLIAMS; JAMES H.
WILLIAMS, her husband; JAMIE
WILLIAMS, by and through her
guardian, JAMES H. WILLIAMS,

Plaintiffs

v.

CONTINENTAL GENERAL TIRE,
INC; SEARS ROEBUCK AND CO.,

Defendants and Third Party Plaintiffs

v.

EMMA JEAN WILLIAMS,

Third Party Defendant

(D.C. Docket No. 00-cv-01259)

RICHARD ABRAMS; SHEILA
ABRAMS, his wife,

Plaintiffs
v.

CONTINENTAL GENERAL TIRE,
INC.; SEARS ROEBUCK AND CO.,

Defendants and Third Party Plaintiffs
v.

EMMA JEAN WILLIAMS,

Third Party Defendant

(D.C. Docket No. 00-cv-01260)

Mary Lou Covington; Harry Covington,
her husband;
Emma Jean Williams; James H.
Williams, her husband;
Jamie Williams, by and through her
guardian, James
H. Williams; Richard Abrams; Sheila
Abrams, his wife,

Appellants

On Appeal from the United States
District Court
for the Western District of Pennsylvania
(Civil Action No. 00-cv-01258)
District Judge: Hon. Arthur J. Schwab

Argued: June 22, 2004

Before: NYGAARD, McKEE and
CHERTOFF, Circuit Judges.

(Filed: August 20, 2004)

DANIEL P. LYNCH, ESQ. (argued)
LORRAINE N. MACKLER
Lynn & Weis, LLC
101 Smith Drive, Suite 10
Cranberry Township, PA  16066
Attorneys for Appellants

CLEM C. TRISCHLER
TIMOTHY R. SMITH (argued)
Pietragallo, Bosick & Gordon
301 Grant Street
One Oxford Centre, 38th Floor
Pittsburgh, PA  15219
Attorneys for Appellee Continental
General Tire Co.

OPINION OF THE COURT

McKEE, Circuit Judge.

In this action to enforce a settlement agreement, we are asked to decide whether Pennsylvania law requires an attorney to have express authority to settle a suit on behalf of a client or whether apparent authority is sufficient to enforce a settlement agreement.  For the reasons that follow, we hold that the Pennsylvania Supreme Court would require express authority under the circumstances here.  We will therefore reverse.

## I.  FACTS AND PROCEDURAL BACKGROUND

Plaintiffs Emma Jean Williams, Jamie Williams, Mary Lou Covington, Richard Abrams, and Sheila Abrams were passengers in a car that was involved in an accident allegedly caused by a defective tire manufactured by Continental General Tire, Inc.  Plaintiffs subsequently retained Carl R. Schiffman, Esq. to bring suit against Continental as well as Sears and Roebuck.[1]  As part of the retainer agreement, plaintiffs executed a power of attorney in favor of Schiffman, that stated in relevant part that: Schiffman, "shall not make any settlements without [clients'] consent."

During the ensuing discovery, Schiffman engaged tire expert Gary A. Derian who prepared a report and provided deposition testimony.  However, Derian's testimony turned out to be problematic for plaintiffs.  Schiffman concluded that Derian's testimony seriously weakened his case against Continental, and he decided to enter into settlement discussions with

----

[1] Although it is not clear from the briefs, the opinion of the District Court, or from the Magistrate Judge's Report and Recommendation, we assume that Sears was sued because it sold the tire to the owner of the automobile plaintiffs were riding in.

2

Clem Trischler, counsel for Continental. Plaintiffs and Schiffman disagree about whether Schiffman ever informed them of those negotiations. However, it is undisputed that Schiffman eventually represented to Trischler that plaintiffs were willing to settle their case against Continental and proceed only against Sears. Schiffman and Trischler then reached an agreement whereby plaintiffs would dismiss their action against Continental and pursue only Sears in return for Continental's agreement to provide its expert for plaintiffs to use against Sears. Upon learning of the purported settlement, plaintiffs told Schiffman they would not sign the agreement and stipulated dismissal.

When Schiffman informed Trischler that plaintiffs would not execute the settlement documents, Continental filed the instant motion to enforce the agreement. The District Court granted the motion based upon the Magistrate Judge's Report and Recommendation. This appeal followed.

## II. JURISDICTION AND STANDARD OF REVIEW

We have appellate jurisdiction under 28 U.S.C. §1291. Because this appeal presents an issue of law, we exercise plenary review of the District Court's decision to grant Continental's motion to enforce the dismissal agreement. *Concerned Citizens of Bridesburg v. Philadelphia Water Dept.*, 843 F.2d 679, 681 (3d Cir. 1988).

## III. DISCUSSION

It is well established that a federal court exercising diversity jurisdiction must apply the substantive law of the appropriate state. In the absence of a definitive ruling by a state's highest court, we must predict how that court would rule if faced with the issue. *Packard v. Provident Nat. Bank*, 994 F.2d 1039, 1046 (3d Cir.1993). "In carrying out that task, we must consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *Id.* The decision of an intermediate state court is particularly relevant and "is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *C.I.R. v. Bosch's Estate*, 387 U.S. 456, 465 (1967).

Plaintiffs contend that they are not bound by Schiffman's representation of settlement authority because they never expressly agreed to settle their claims, which they argue is required under Pennsylvania law before an attorney can settle his/her client's case. Defendants, on the other hand, argue that Pennsylvania recognizes an attorney's apparent authority to bind a client to a settlement, and that Schiffman's apparent authority to act on behalf of his clients in this instance was sufficient to compel enforcement of the settlement agreement.

Although the Pennsylvania Supreme Court has not recently addressed this issue, our analysis is informed by our own decision in *Farris v. JC Penny Co.,*

3

*Inc.*, 176 F.3d 706 (3d Cir. 1999), as well as early decisions of the Pennsylvania Supreme Court, which we examined in reaching our decision in *Farris*.

In *Farris*, plaintiffs' attorney represented in open court that plaintiffs had agreed to a settlement with defendant. However, plaintiffs never actually agreed to settle the case and, in fact, had told their attorney that they would not settle until medical treatment was completed. Although plaintiffs were in court when the agreement was read into the record, they did not understand what was happening until after the proceeding was over. Upon realizing the nature of the settlement, plaintiffs expressed their displeasure to their attorney and told opposing counsel they had not authorized the settlement that had just been presented to the court. *Id.* at 708-09. Nevertheless, the District Court entered an order dismissing the suit under Federal Rule of Civil Procedure 41(b). Plaintiffs subsequently obtained new counsel and filed a motion for relief from the dismissal pursuant to Federal Rule of Civil Procedure 60(b). The District Court denied the motion and plaintiffs appealed.

We reversed the District Court's decision based largely upon the Pennsylvania Supreme Court's decision in *Starling v. West Erie Bldg. & Loan Ass'n*, 3 A.2d 387 (Pa. 1939). In *Starling*, the court had stated that "[w]ithout express authority [an attorney] cannot compromise or settle his client's claim . . . ." *Id.* at 388. Although the court recognized that the authority granted an attorney by virtue of his/her office is broad and includes the authority to "bind [his/her] clients by

admissions and acts in the course of suit or in the management of the regular course of litigation," it cautioned that "such apparent or implied authority does not extend to unauthorized acts which will result in the surrender of any substantial right of the client, or the imposition of new liabilities or burdens upon him." *Id.*

Our analysis in *Farris* also included a discussion of the potential conflict between *Starling* and *Rothman v. Fillette*, 469 A.2d 543 (Pa. 1983). In *Rothman*, plaintiff's attorney informed the defendants' insurance company that his client had agreed to a settlement despite the fact that his client had never given him any such authority. The attorney then forged his client's signature on the release that was tendered by the insurance company and pocketed the settlement check. When the client discovered years later that he had been deceived by his attorney, he filed a motion to reopen his suit arguing that "since he was neither aware of, nor had he authorized the settlement and [since] his agent acted without authority, he should not be prevented from pursuing his claim against [defendants] and their insurer." 469 A.2d at 545. The trial court agreed, but the Superior Court reversed the trial court's reinstatement of plaintiff's suit.

The Supreme Court began its analysis in *Rothman* by stating that the case did not present a question of implied or apparent agency. *Id.* Nevertheless, the court stated in no uncertain terms that "an attorney must have express authority to settle a cause of action." *Id.* Having dismissed the issue of authority, the court

4

went on to hold that "where one of two innocent persons must suffer because of the fraud of a third, the one who has accredited him must bear the loss." *Id*. Significantly, the court also mentioned that the defrauded client could seek relief from the Pennsylvania Client Security Fund. *Id*. at 546 n.4. The court did not specifically consider the issue of apparent authority except insofar as to reiterate the holding of *Starling*. Rather, it simply held that "a principal acting through an agent in dealing with an innocent third party must bear the consequences of the agent's fraud." *Id*. Nevertheless, in *Farris*, we recognized that *Rothman* can be read as suggesting that apparent authority may become the basis for enforcing a settlement where the conduct of the principal warrants that result. *Farris*, 176 F.3d at 709 ("At best, the court has left the applicability of the [apparent authority] doctrine open, seeming to suggest in *Rothman* . . . that apparent authority might be used to enforce a settlement given the right set of facts.").

When we decided *Farris* "[t]he only direct endorsement of apparent authority in Pennsylvania [was] set forth in an intermediate appellate court decision, *Sistrik v. Jones & Laughlin Steel Corp.*, 189 Pa.Super. 47, 149 A.2d 498 (1959)." *Farris*, 176 F.3d at 709. There, the trial court enforced a settlement based upon apparent authority, and the Superior Court affirmed. However, the decision rested not upon the agent/attorney's conduct, but upon the conduct of the principals, his clients, who had conducted themselves in a manner that "clothed their counsel with

authority to settle the case upon principles of apparent authority . . . ." *Id*. at 710.

Based on *Rothman* and *Sistrik*, as well as our own prior interpretations of those decisions, we held, in *Farris*, that "in order for the doctrine of apparent authority to apply, the facts must show that the plaintiffs (principals) communicated directly with defense counsel, making representations that would lead defense counsel to believe that the plaintiffs' attorney had authority to settle the case." *Id*. at 712. In other words, the doctrine of apparent authority does apply where the client's communications to opposing counsel create the impression that his/her own attorney has authority to settle. "[T]he 'crucial question in ascertaining whether apparent authority has been created is whether the *principal* has made representations concerning the agent's authority to the third party.'" *Id*. at 711-12 (quoting *Edwards v. Born Inc., 792 F.2d 387 (3d Cir. 1986)). No one contends that plaintiffs here made any such representations to Continental's counsel.

However, *Farris* is no longer the beginning and end of our inquiry. After we decided *Farris*, the Pennsylvania Superior Court decided *Hannington v. Trustees of the Univ. of Pennsylvania*, 809 A.2d 406 (Pa. Super. 2002). There, the university terminated plaintiff, a Ph.D. candidate, for not paying his tuition. *Id*. at 407. Plaintiff then brought an action against the university, and settlement discussions ensued. A settlement was ultimately reached; however, plaintiff refused to sign the final settlement papers arguing he had not authorized his attorney

5

to settle the case. *Id.* at 408. The court relied upon the doctrine of apparent authority to enforce the settlement, concluding that since the university "had a reasonable belief that [plaintiff] had authorized the settlement, the doctrine of apparent authority is applicable to enforce the settlement agreement . . . ." *Id*. at 410.

Continental relies on *Hannington* in arguing that the settlement here is binding. However, we are not persuaded by *Hannington*. The Pennsylvania Supreme Court's holding in *Starling* has not only never been overruled, it has been reiterated in subsequent cases, and even the *Rothman* court paid homage to the holding in *Starling* while raising the specter of "apparent authority."

Continental also argues that *Hannington* is a logical extension of *Rothman*. We disagree. Although questions of agency certainly emanated from the ethers of *Rothman*, as we noted earlier, the court went out of its way to explain that it was not basing its decision on principles of agency. *See Rothman*, 469 A.2d at 545. *Rothman* is helpful, however, in those rare instances where an innocent principal and an innocent third party are defrauded by an agent and the court must apportion loss. More narrowly, it applies where the principal has a remedy that will not further injure the wronged third party such as the Client Security Fund mentioned above. That is certainly not the case here and we do not find *Hannington* to be so persuasive as to cause us to revisit our holding in *Farris*. We therefore conclude that the District Court erred in relying upon *Hannington* despite the circuit precedent of *Farris*.

In reaching its decision, the District Court adopted the Report and Recommendation of the Magistrate Judge with little additional analysis. The court did cite the Superior Court's decision in *Hannington*, stating that it "is based upon sound judgment and reason and this court will not now disturb its finding." Appx. 3. However, *Hannington* relies almost exclusively on *Rothman*, where, as we have explained, the Pennsylvania Supreme Court did not rest its decision on principles of agency. Moreover, the District Court did not cite our decision in *Farris*, nor explain how it could avoid controlling precedent. In adopting the Report and Recommendation, the District Court also overlooked the problems with the Magistrate Judge's analysis. The Magistrate Judge did "recognize [t]hat *Hannington* conflicts with the prior opinion of the United States Court of Appeals for the Third Circuit . . . in *Farris* . . . ." Appx. 40. The Magistrate Judge also noted that we look to intermediate appellate court decisions for guidance in the absence of "a reported decision on point by the Pennsylvania Supreme Court." Appx. 47. The Magistrate Judge then stated that "[t]his directive effectively diminishes the significance of *Farris* because the Court of Appeals considered the apparent authority issue without the benefit of the Superior Court's subsequent decision in *Hannington*." *Id.* Of course, the jurisprudential danger in that analysis is evidenced by the fact that we do not find *Hannington* persuasive for the reasons we

6

have explained.[2]

## IV. CONCLUSION

Accordingly, for the above reasons we rule that an attorney has to have an express authority to settle a client's claims therefore, we will reverse.

_____

---

[2] The Magistrate Judge was also troubled by the fact that our decision in *Farris* suggests that an apparent agency will be recognized based upon the principal's representations to, and interaction with, opposing counsel. *See* Appx. 47. The Magistrate Judge noted that counsel could not have such communications with opposing clients without violating Pennsylvania Rule of Professional Conduct 4.2. The Magistrate Judge then opined, "[c]onsequently, under the facts in this case, Trischler would have reached Rule 4.2 if he had conferred directly with the plaintiffs as suggested by *Farris*." Appx. 47 n.6. (citing *Hannington*, 809 A2d. at 410 n.4.) The Magistrate Judge thought this an additional reason to rely upon *Hannington* despite our decision in *Farris*. However, notwithstanding the application of Rule 4.2, or the intervening decision in *Hannington*, the Magistrate Judge should have relied upon *Farris*, the controlling law in this circuit.